Good morning, Your Honor. Richard Corona for Steiny and Company. May it please the Court, I think the issues that we bring to the Court are one, a process, a procedure, and the other, a substance. The procedural issue concerns the nature of the summary judgment order of the trial court. That decision is essentially a one-liner, motion granted. Could I ask, were there any, was there oral argument before the order was entered or any interaction with the judge other than the briefing? None, Your Honor. The Court did not elect to have oral argument. It certainly was requested. So all we have is briefing, a period of months when we have waited for the Court's decision either to have oral argument or whatever, and then we received in the mail a basic one-liner. And the problem with that decision, of course, is that it doesn't give this Court and certainly did not give Steiny and Company a clue of the factual, legal basis of the decision of the trial court. Well, we can assume, maybe we can't, but to grant summary judgment, the district court at least has to conclude in its own mind that there's no genuine factual dispute. Well, that would – certainly that's the conclusion, but the – Well, that's the first determination. Then you say based on these non-disputed facts, either the movement is – the moving party is entitled to judgment as a matter of law. So if you just look at the first determination, was your argument that the facts are in dispute here? The facts are in dispute, as is the interpretation of the contract, and there is no way to ascertain on what basis the Court made its ruling. Well, as long as there was a factual dispute, summary judgment would have been inappropriate. And there are numerous factual disputes. So what facts are in dispute? That's the problem. We don't know what the Court said. You're counsel for Steiny, right? From our perspective, the – And you must have argued to the district court in your opposition to summary judgment that these facts are in dispute, they're material, and they need to be resolved before you can actually properly interpret the contract. The two claims that we pursued on the substance of the matter after the settlement between CNA and Morley were that we were denied policy benefits for the better part of five years or five years plus by the representations made by CNA to Morley, the additional insured, our general contractor. That caused Steiny to be sued by Morley for breach of contract, claiming that we did not provide the insurance that our contract required. CNA later recanted from that position and said we did provide the insurance the contract required. The problem is, in the ensuing period of time, we were sued, we incurred in excess of $100,000 in litigation costs because of the wrongful, tortious denial of benefits by CNA, which was the only cause and the alleged cause in the complaint by Morley for our being sued to begin with, together with CNA and that underlying action. Apparently, there is a dispute that that representation had that effect, and it is claimed in the motion, as well as in the answering brief here, that what occurred actually was benefits were provided late. That's not at all the gravamen of our claim, and they seem to misconstrue it, and I suggest that the district court misunderstood our claim, bought onto CNA's arguments, which were not a correct articulation of our claims, and granted. But I have no idea why, because on the facts as we know them, which are not disputed much as far as I can see, Mr. Costa of CNA issued a letter to Morley saying you don't have the insurance that Steiny agreed to provide under their subcontract. That caused us to be sued. So you just said a moment ago, you just said the facts were not disputed. We don't believe they are. CNA claims causation is not present. That's a question of fact. That's a disputed issue, I would suggest. That's one of the things and one of the reasons why the court could not have issued a summary judgment order on that motion. So causation is... It's always a factual issue, and it is here. It's within dispute here. It certainly is. The other issue, which is a mixed legal and factual issue, concerns the meaning of the contract, the interpretation of the contract, and the conduct under the contract with respect to the settlement of the Morley claim. And there, to the extent the district court determined that issue as a matter of law by interpreting the contract, that was an error. There are numerous grounds that are alleged as to why the claim advanced by Steiny that it had the right to approve any settlement, and there's no dispute it was not given that right, why that would and did cause damage, because they stole our $200,000 that was in deposit in the account in this entire insurance program. Now, had they made only one claim... You always smile when somebody overstates the situation. They didn't steal it. Well, it's interesting, Your Honor. I say that, and probably that's a little hyperbole, but on the one hand, CNA says we're not a party to that claim service agreement. We have no idea what it's about. It doesn't concern us at all. That's one of their primary arguments. On the other hand, they, in fact, directly took the money that had been deposited by Steiny under the CSA directly. They didn't go through CERB Gold. They didn't do anything. Just took it. That, to me, as a factual matter, creates a dramatic inconsistency. So it's either conduct pursuant to the CSA, which included not only that we deposit money, but that we have the authority to approve and consent a settlement over $10,000, or it doesn't apply at all and they should not have taken our money. What is the bottom line? What do you want this court to do? We would like that the court reverse. This case cannot be the subject of a summary judgment motion, and with instructions that the matter proceed to trial. We would, I think it's clearly the case that absent a record or a statement of decision, explanation, either an oral argument or in some fashion. How would we direct it to proceed to trial? If we would remand it for further proceedings, it might be perfectly possible to fill in what you see as holes and resolve this case on summary judgment. Well, there is the issue of damages, which cannot be resolved summarily. There certainly can be an adjudication of issues, which is what? Well, of course, the question is whether there are damages due. And if there are no damages due, then you don't get to what you're talking about as a factual question. The argument of damages, Your Honor, I don't think was made in the motion as presented to the trial court. There's no doubt, I don't think, that we incurred costs of defense in the Morley action. There's no doubt the $200,000 was taken. There's no doubt that we've incurred brand fees and attorney's fees in this litigation, which we believe under the CSA incorporated in the contract of insurance and the letter of confirmation provide for attorney's fees. So we have either an apprentice under the contract, under brand, a claim for attorney's fees. Those issues, of course, are ongoing. So the response is that the summary judgment decision, in our estimation, was wrong. The case cannot be summarily adjudicated in final form. There could be adjudication of issues. And one of the issues is that the contract is comprised of those three instruments. CNA claims that there's no dispute factually about that, while at the same time claiming that they're not bound by the CSA, they're not a party to the CSA, and ignore the endorsement number 24, which expressly includes the CSA, and ignores the confirmation letter, which expressly includes both the policies and the CSA. So all the documents refer to each other. They're contemporaneously made under standard principles, fundamental principles of contract interpretation. You can't read them in isolation. They have to be read together, particularly in the context of adhesive insurance contracts. Exactly which documents make up the contract is a factual dispute. That is one of the factual issues that preclude a summary adjudication. Unless the court has questions, I'd like to reserve the balance of my time for rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Hillary Ann Hancock, appearing on behalf of Transportation and Continental. To directly address the questions that this Court raised with counsel, it doesn't matter if the contract is just the policy or if the contract is the policy and the claim service agreement. Summary judgment is appropriate under either. Why is that? According to the claim service agreement, let's just assume that he's correct and it does form a part of the contract. The claim service agreement, okay. Okay? I have it. Okay. Turn to here. In the same provision that Stiney makes much ado about regarding the portion that says, Stiney hereby grants Servco complete and sole authority and discretion to settle claims for an amount of $10,000. Now, where is that? That is in the record. That is on page 627. No, of the claim service agreement, it was what? Oh, it is on paragraph 8, claim settlement. Paragraph 8. Okay. And I'm reading from the very first paragraph under there. The second sentence says, however, Servco reserves the right to settle a claim in excess of its discretionary authority. If in its sole opinion, failure to settle will subject Servco to fines, penalties, or damages. But more importantly, two paragraphs down, which is a paragraph we cite in our brief. It says, if Servco settles a claim in excess of its discretionary authority without the consent of client, Servco shall not be liable to client for any loss resulting solely from Servco's failure to obtain client's consent to the settlement  At no time, in either in opposition to our motion or throughout the case, was there ever any evidence presented that any failure of CNA to obtain the consent was knowing and deliberate. CNA. Does that mean they just acted out of ignorance? No, they acted very intentionally in conformance with the policy conditions as well as with the claim settlement practices. Further back in the claim service agreement on page 629 of the record or paragraph 11 of the claim service agreement, the section entitled collateral. It specifically says that the client grants and assigns for collateral purposes the aggregate sum of all payments or deposits. What CNA did in settling the Morley claim was exactly what it should have done under both contracts. It defended and it indemnified. And it took, as it is allowed to do under either the policy or the claim service agreement, 208,000 of the 290,000 of cash collateral and used that portion to settle part of the settlement. And they filled in the rest, I believe it was up to 435,000. The bottom line is, is that what Stiney wants to happen here is that they not be held to either contract under any circumstance. They want the defense, which they got. They want the indemnity, which they got. But they don't want to put up their portion of the cash collateral. They wanted CNA to settle the claims without any contribution from them. And that is not what they bargained for under either the policy or the claim service agreement. Which policy provision supports what you just said? The insuring clause of the policy, which specifies that we have in our sole discretion, hold on. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any occurrence and settle any claim or suit that may result. It is in paragraph one of the insuring agreement. And case law has... What's the excerpt of the record say? Page 290. In addition, the cases that CNA relies on, including the Western Polymer v. Reliance case, 1995-32 Calat 4th 14 at 27. The Western Polymer court states, quote, and encapsulates the issue very well. A liability insurance policy's purpose is to provide the insured with the defense and indemnification of third-party claims. And not to insure the entire range of the insured's well-being. And that is exactly what Steine seeks here. They want benefits over and above the policy. CNA at no point withheld policy benefits. It did exactly what it was supposed to do. And that is exactly what it was supposed to do. Assuming that Steine had withheld its consent and that no settlement had been reached. The end result was that the case would have gone to trial and Morley may or may not have been... Excuse me, Steine may or may not have been found liable. And they would still seek, even over the $435,000 settlement, they would ask that CNA indemnify it for the judgment. And not take the $208,000 of the collateral. And that's not what it bargained for. What was that, you know, the CSA, the funds, when could they be used? They could be used, it says in paragraph 8 of the collateral, at any time. The deposit was required upon reaching of the agreement. And they could be used at any time. And again, that's page 629 of the record. They were constantly reevaluated every several months, depending on what payments CNA made or did not make under the Steine policy. Yes, I understand Mr. Koroma's position, and maybe I don't understand it. But as I understand it, they're complaining about two things. They felt you couldn't settle without their consent. Do you think that's true? Absolutely not. And I think even under the claim service agreement, which he contends is part of the contract, they can't do that. The section that I read from, paragraph 8, even contemplates CERVCO settling a claim in excess of its discretionary authority without the consent of the client. And it specifically says in those instances, CERVCO, which they claim includes CNA, and I would agree in that provision, shall not be liable to client for any loss resulting solely from CERVCO's failure to obtain client's consent. It was always contemplated that there may be a time when CERVCO or CNA wanted to settle a case and the client may not consent. But under the terms of the policy, we have every right to control settlement so long as we defend, and we did. He's coming to rebut, so why don't you give him your tight capsule of what is before us for decision? An encapsulation of the issue before you is that, in our opinion, under either his interpretation of the contract being the policy alone or the policy and the claim service agreement, we win. CNA did exactly what it was supposed to do. It followed the policy provisions, and under the CSA, it cannot be held liable. How do you respond to the procedural argument made about the district court judge's failure to follow Rule 52A in terms of findings and conclusions? Well, first, according to just the basic Rule 52 itself, it says that findings of fact and conclusions of law are unnecessary on a decision on a motion for summary judgment. So we do not believe that the court had any obligation to set forth its reasoning. But the court's rule does say, based on all of the moving papers and all of the evidence submitted to the court, the court grants CNA's motion for summary judgment for all of the reasons set forth in those papers. So, you know, the Rule 56 and 52A, you're correct. Technically, in granting a motion for summary judgment, a district court is not required to make findings and conclusions. Rather, they find that their facts are not in dispute, and from the nondisputed facts, the court draws a legal conclusion. But our case law in the Ninth Circuit is set for purposes of appellate taking. Even though our review is de novo, we do prefer that the district court at least tell us. They don't have to do it in an elaborate way or some explanation about how they arrived at their decision, especially when multiple grounds are asserted. There is the case of Couveau v. American Airlines in 2000 that was decided by the Ninth Circuit, in which case the MSJ ruling was upheld, even without findings of fact, because the appellate court found that there was no valid ground. So there is a... But we have also sent cases back to the district court in order to explain them so that we can conduct a meaningful review. On summary judgment, we're not... We essentially, by de novo review, we undertake our own review. Nonetheless, you kind of want to know what the district court did to be informed by their decision. We would submit, Your Honor, that the motion was fairly clear and all of the evidence was before the court. Let me ask you this. I didn't quite catch this the first time through, but this Clause 8 in the claim settlement, whatever it's called. Claim service agreement, yes. Paragraph 8, Section 8 under that, Section 1, 2, 3, the third paragraph, unless the failure is known and deliberate. Correct. Isn't that what they're alleging here? If they're alleging it, it's certainly unclear from their opposition. There's no evidence presented that CNA's settlement or failure to obtain the consent was knowing and deliberate. None. In fact, if I recall, and it's not before you, but the deposition testimony of their client and our claims adjuster was that the client was present at the mediation when the case was settled. That was not an issue raised by Stiney in opposition, so it was not an issue, and it was never really an issue during the case. We did not move on that ground. Thank you, Your Honors. If I may first address counsel's comments with regard to the record. There is no dispute that our consent was not obtained. There is no dispute the settlement was made not by accident, not unwittingly by CNA. It was made in the course of mediation in which Stiney was present, lawyers from my office were present. They did not consult, did not seek. They just informed us after the fact that a deal was done, and then they executed it over our objection. In advance, during, and after. So you say that this clause applies to what happened here. Exactly. And the reason why that clause is there is because it is provided in the CSA that if they had some kind of bad faith exposure to a claimant, something that would create exposure to them far greater than would be normal, then they maybe did have reserved to themselves a right to settle over our objection or without our consent. But that didn't happen here. It was specifically negotiated as part of the recanting of the SIR deductible debate that the Morley complaint for bad faith would be dismissed, and was prior to this settlement effectuating. So to suggest to the court that their actions were annoying and deliberate is to suggest they acted mindlessly by accident and mistake and wrote a check for north of $400,000, not realizing they were doing that. That suggestion is offensive. In requests for admissions below, and they were presented to the district court, CNA was asked to admit that they did not obtain our consent. They admitted that. So to suggest there's no evidence is, again, not supported by the record. Their expert, their principals testified under examination that consent was not obtained, without doubt consent was not obtained, and that the action was deliberate and intentional on CNA's part in settling with Morley. So that argument, frankly, is contrary to what the record says. The notion that CNA could settle without Stiney's consent is directly and, in my view, unequivocally belied by Section 8 of the CSA. I find it interesting how it is that CNA, for one purpose, says the CSA does apply to us, as counsel just admitted, when they can take the money, doesn't apply to them in other circumstances when they have to obtain consent. You can't have it both ways. Either it is or it's not part of the documents of this transaction and this insurance program. We submit it is and must be. It certainly is the case. Is the whole basis for your claim just they didn't get your consent? Well, there's two claims. The one is they got sued by Morley because they misrepresented the terms of our coverage. And that's one element of damage in one of our claims. The other is that they settled without our consent. Now, the fact is that had the matter proceeded to trial, it is my belief that Morley would lose, as they did in the direct action between Stiney and Morley in state court. We never had a chance to have those facts ventilated and the res judicata or collateral estoppel effect of a prior court ruling that went up on appeal where Morley didn't get anything. And there's reasons for that, but they're not in this record. So we weren't just being capricious and arbitrary about we're not going to let you do something that's in your interest. We have had and will have on remand, in my opinion, substantial grounds to demonstrate that CNA acted imprudently. Paid as a volunteer. Is that position outrageous? That is exactly the same position that CNA took at the outset of the matter between CNA and Morley. CNA took the position you paid Hughes, really, Morley's insurer paid Hughes, an amount that you should not have paid under the facts and circumstances of the case and the underlying claim and acted purely as a volunteer for whatever reasons. So it wasn't just a technicality of consent not being obtained. There was a reason why consent was withheld. I gather your position is they settled a claim without your consent, and they settled it knowing that that was a fund created by your company from which they could take the money to pay the claim. They settled without any risk to themselves that they have to pay additional money. To the extent of that deposit, that is correct. They had our money for a purpose. The condition of that purpose was you have to have our consent if the settlement is over $10,000 and you don't have faith exposure. In that instance, you need our consent. They disregarded that but still took the money. What I don't understand is why you think we have to remand for trial, why we don't just remand for further proceedings and let the court clear up what should have been and what should not have been done. Let me address that, Your Honor. Under Kuvo, counsel said that the court of appeal, this court ---- I had to ask the last question because my colleagues are saying if you hadn't asked another question, go ahead. Counsel indicated that the circuit upheld the trial court's decision for a summary judgment in Kuvo. That's not the case. It's exactly the opposite. In Kuvo, the court reiterated the Ninth Circuit policy that while Rule 52 doesn't exactly require findings and conclusions, this court has always imposed on the trial court an obligation to explain what it did to aid in its interpretation. In Kuvo, the court did what I'm asking this court to do now, examined the underlying motion papers and concluded that summary judgment in that case was improper and reversed. And that's what we'd like to ask that the court do, not send the matter on a remand to make explanation of its ruling and expose the parties to further litigation coming back up for another review. That's why we're asking for reversal. Any other questions? I guess the court was the last question, so thank you very much for your attention. Thank you. We appreciate your arguments. Thank you very much. The matter will be submitted. And that will end our session for today. All rise. Thank you. This court for this session stands adjourned.
judges: Farris, Paez, Conlon